IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MIKELL KELLY and** | § | |
| **CHARITY KELLY,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-3374-N-BK |
| | § | |
| **JPMORGAN CHASE BANK, N.A.,** | § | |
| **MORTGAGE ELECTRONIC** | § | |
| **REGISTRATION SYSTEM, INC.,** | § | |
| **FREEDOM MORTGAGE CORP.,** | § | |
| | § | |
| **Defendants.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3*, this case has been referred to the undersigned for pretrial management. The Court now considers Defendants' *Motion to Dismiss Plaintiffs' Amended Complaint* (Doc. 15). For the reasons discussed below, it is recommended that the motion be **GRANTED**.

## BACKGROUND

On August 3, 2012, *pro se* Plaintiffs Mikelle and Charity Kelly filed suit in state court against Defendant J.P. Morgan Chase Bank, N.A. ("JPMC") in connection with the initiation of foreclosure proceedings on Plaintiffs' home. (Doc. 1-1 at 7). On September 10, 2012, after the case was removed to this Court, Plaintiffs filed their *First Amended Petition* against JPMC, Mortgage Electronic Registration System, Inc. ("MERS"), and Freedom Mortgage Corp. ("FMC") (Doc. 9). The *First Amended Petition* alleges (1) criminal violations against Defendants for making a false statement and tampering with a governmental record, as well as civil claims of civil rights violations and conspiracy, under 42 U.S.C. §§ 1983, 1985, and 1986;

(2) fraudulent misrepresentation; (3) conspiracy; (4) quiet title; (5) violations of the Racketeer Influenced and Corrupt Organizations provisions of Title IX of the Organized Crime Control Act of 1970 ("RICO"); (6) violations of the Real Estate Settlement Procedures Act ("RESPA"); (7) violations of section 12.002(a) of the Texas Civil Practices and Remedies Code; (8) violations of 15 U.S.C. §78; and (9) violations of section 37.10 of the Texas Penal Code. (Doc. 9, *passim*).

Defendants JPMC and MERS now move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (Doc. 15). For the reasons that follow, it is recommended that the motion be **GRANTED**.

## APPLICABLE STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege enough facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). In ruling on a motion to dismiss, a court must accept all factual allegations in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). In order to overcome a Rule 12(b)(6) motion, a plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery … or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). A complaint thus is not sufficient if it merely contains "naked assertions" devoid of factual enhancement. *Id.*

## ANALYSIS

Plaintiffs' claims against Defendants are generally premised on three faulty legal theories.[2] Those theories are discussed, followed by an analysis of Plaintiffs' individual causes of action.

---

[1] There is no evidence in the record that FMC has ever been served or made an appearance in this case.

**A.    MERS's Assignment to JPMC**

Plaintiffs' complaint alleges that MERS was not listed on the Note that secured their loan on the property and, therefore, lacked authority to assign, transfer or sell the Note to JPMC. (Doc. 9 at 7, 8).  In their *Motion to Dismiss*, Defendants argue that Plaintiffs do not have standing to challenge the MERS assignment because they were not parties to the assignment. (Doc. 15 at 14).  Additionally, Defendants argue that MERS had the legal right to assign the mortgage to JPMC because the Deed of Trust explicitly gives MERS authority to assign and to foreclose.  *Id.* at 13.

Defendants correctly note Plaintiff's lack of standing.  *See DeFranceschi v. Wells Fargo Bank, N.A.,* 837 F. Supp. 2d 616, 623 (N.D. Tex. 2011) (Means, J.) ("Plaintiffs do not have standing to challenge the assignment because they were not party to those assignments.") (citing *Eskridge v. Federal Home Loan Mortg. Corp.*, 2011 WL 2163989, at *5 (W.D. Tex. 2011)). Additionally, MERS had the authority to assign, transfer or sell the Deed of Trust, and in turn, the Note, to JPMC.  *Id.*  ("In other words, a transfer of an obligation secured by a note also transfers the note because the deed of trust and note are read together to evaluate their provisions.").  (Doc. 15-1 at 3).  Under similar circumstances, state and federal courts in Texas have consistently held that that MERS has the authority to transfer the rights and interests in a Deed of Trust if that authority is provided in the operative documents, and have consistently rejected claims based on an alleged wrongful foreclosure or lack of authority where the Deed of Trust specifically grants the defendant a right to foreclose upon the plaintiff's default.  *See, e.g., Wiggington v. Bank of New York Mellon*, No. 3:10-cv-2128-G, 2011 WL 2669071, at *3 (N.D.

---

[2] Plaintiffs' response to Defendants' Motion to Dismiss basically reiterates many of the allegations they previously made in their complaint, in addition to providing links to various news stories about the Defendants.  (Doc. 16).  Thus, this recommendation does not separately discuss Plaintiffs' response to the dismissal motion.

Tex. 2011); *Richardson v. CitiMortgage, Inc.,* No. 6:10-cv-119, 2010 WL 4818556, at *5 (E.D. Tex. 2010); *Santarose v. Aurora Bank FSB*, No. H-10-720, 2010 WL 2232819, at *5 (W.D. Tex. 2010); *DeFranceschi,* 837 F.Supp.2d at 623; *Athey v. MERS*, 314 S.W.3d 161, 166 (Tex. App.—Eastland 2010). Where "MERS is a beneficiary and nominee for both the originating lender and its successors and assigns by the express language in the Deed of Trust, the situation falls within an exception to the general rule that a party holding only the deed of trust cannot enforce the mortgage." *Eskridge*, 2011 WL 2163989, at *5 (*citing* Comment e to the Restatement (3d) of Property (Mortgages) § 5.4).

In this case, the Deed of Trust provides that MERS is the "nominee for Lender . . . and Lender's successors and assigns." (Doc. 15-1 at 3). The Deed of Trust also states that MERS "hold[s] only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with the law or custom, MERS (as nominee for Lender and Lender's successors and assigns), has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property." *Id.* at 4. As discussed in more detail below, a transfer of the Deed of Trust automatically passes the Note as well. *DeFranceschi,* 837 F.Supp.2d at 623 (rejecting the "split-the-note theory"). Accordingly, Plaintiffs' claim that MERS did not have the authority to transfer the Note is without merit.

**B. Plaintiffs' "Split the Note Theory"**

Plaintiffs' second underlying legal theory is that the Note and the security interest embodied in the Deed of Trust were split between two parties and, thus, the Note became unsecured and dissolved the authority to foreclose. (Doc. 9 at 4). Specifically, Plaintiffs allege:

> Defendants FMC therefore had no legal power or right to record, file, assign or transfer documents that are rendered invalid by law. As a matter of law, the right to foreclose goes away when the promissory note is "split" from the deed of trust that it is supposed to secure.

> \* \* \*
> As a matter of law, the right to foreclose goes away when the promissory note is "split" from the deed of trust that it is supposed to secure. The note that Plaintiff and his wife signed and gave to FMC didn't mention MERS, so MERS had no right to assign the note to JPMC. The assignment that MERS made to JPMC conveyed only the deed of trust, splitting it from the note.  When MERS assigned the note to JPMC, the note became unsecured and the deed of trust became worthless.

*Id.* at 4, 8, 13.  Defendants counter that this theory has been soundly rejected by this and other Texas federal courts.  (Doc. 15 at 15, citing *Salmeron v. CitiMortgage, Inc.*, 3:11-CV-1398-M-BK, 2012 WL 760110 (N.D. Tex. Feb. 3, 2012) (Toliver, M.J.) *adopted by* 2012 WL 760109 (N.D. Tex. Mar. 7, 2012)).

Unfortunately for Plaintiffs, the split-the-note theory upon which they rely is wholly without merit.  As Defendants correctly note, arguments similar to Plaintiffs have been rejected repeatedly.  *See, e.g., Salmeron,* 2012 WL 760110, at \*3 ("Thus, 'there is no merit to Plaintiffs' argument that the deed of trust and note were 'split,' rendering any attempted foreclosure defective.'") (citations omitted); *Wigginton*, 2011 WL 2669071, at \*2 n.2 (noting that the Texas Property Code allows someone other than the holder of the original note to lawfully foreclose on a property) (Fish, J.); *McAllister v. BAC Home Loans Servicing, LP*, 2011 WL 2200672, at \*6 (E.D. Tex. 2011), *adopted by* 2011 WL 2183844 (E.D. Tex. 2011) (dismissing claim based on "split the note" theory); *Broyles v. Chase Home Finance*, 2011 WL 1428904, at \*3 (same) (Fish, J.); *Eskridge*, 2011 WL 2163989, at \*5 (plaintiff's allegations that the note and deed of trust were split and that she thus had superior title to the property were "without merit because MERS was given the authority to transfer the documents in the Deed of Trust.").

As previously mentioned, courts have noted that a deed of trust has no legal effect apart from the debt, so that a transfer of the deed of trust automatically passes the note as well.  *See DeFranceschi,* 837 F.Supp.2d at 623 ("In other words, a transfer of an obligation secured by a

note also transfers the note because the deed of trust and note are read together to evaluate their provisions.") (citation omitted); *University Sav. Ass'n v. Springwoods Shopping Center*, 644 S.W.2d 705, 706 (Tex. 1982) (noting that a trustee's power to sell a debtor's property derives solely from the deed of trust). Thus, pursuant to MERS's assignment, JPMC was authorized to act under the Deed of Trust to enforce the indebtedness at issue. In short, there is no merit to Plaintiffs' argument that the Deed of Trust and Note in this case being "split" invalidated Defendants' authority to foreclose. To the extent that Plaintiffs rely on this theory to support their underlying claims, those claims undoubtedly fail as well. *See Salmeron,* 2012 WL 760110, at *3 ("Since all of Plaintiffs' claims are premised on the 'split the note' theory, they all fail.").

**C. Plaintiff's "Show-me-the-Note" Theory**

Plaintiff's third underlying legal theory is that neither MERS nor JPMC have the authority to foreclose because they do not hold the original Note and JPMC has "fraudulently represented that it holds the wet-ink original Deed of Trust." (Doc. 9 at 4, 6). Defendants aver that the show-me-the-note theory has been roundly rejected in Texas. (Doc. 15 at 11-13).

The so-called show-me-the-note theory "supposes ... 'that only the holder of the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure.'" *Puig v. Citibank, N.A.*, 2012 WL 1835721, at *5 (N.D. Tex. 2012) (Lindsay, J.) (quoting *Wells v. BAC Home Loans Servicing, L.P.*, 2011 WL 2163987, at *2-3 (W.D. Tex. 2011)) (rejecting the plaintiffs' "show me the note" theory under which the homeowners facing foreclosure sought to require the foreclosing entity to produce the original note and collecting cases). "Courts in this and neighboring districts have 'roundly rejected this theory . . . because foreclosure statutes simply do not require possession or production of the original note.'" *Id.* at *2 (quoting *Wells*,

2011 WL 2163987, at *2). Accordingly, to the extent that Plaintiffs rely on this theory to support their claims against Defendants, those claims must fail.

**D. Fraudulent Misrepresentation and Conspiracy**

Turning now to Plaintiffs' individual claims, Plaintiffs first argue that Defendant JPMC fraudulently acted as a lender through engaging in debt collection acts without the authority to conduct a foreclosure, including attempting to receive payments, using "foreclosure attorneys" to mail notices of foreclosure, and representing that it holds the "wet-ink" original Deed of Trust. (Doc. 9 at 5). Plaintiffs additionally claim that JPMC's actions are proof of a conspiracy to fraudulently acquire Plaintiffs' property. *Id.* at 6. Defendants contend that Plaintiffs fail to allege that Defendants "knowingly and intentionally made a material misrepresentation to Plaintiffs that Plaintiffs justifiably relied on to their detriment." (Doc. 15 at 19). Defendants further urge that Plaintiffs fail to support their conspiracy allegation with facts. *Id*. at 20.

Both of Plaintiffs' allegations fail state a claim and are devoid of factual support. To prevail on a fraudulent misrepresentation claim, a plaintiff must prove (1) the defendant made a false, material representation; (2) the defendant has knowledge that the representation was false or recklessly asserted the representation without knowledge of its truth; (3) the defendant made the representation with intent to induce action of the plaintiff; and (4) the plaintiff detrimentally relied upon the representation and thereby suffered injury. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). Plaintiffs have failed to identify a false material representation of Defendants' authority to foreclose on their property. Rather, they attempt to support this claim by relying on the rejected "split-the-note" and "show-me-the-note" theories to rebut Defendants' authority to foreclose, which, as previously discussed, fail as a matter of law.

Additionally, the elements Plaintiffs must show to establish a claim for civil conspiracy are (1) the involvement of two or more persons, (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 553 (5th Cir. 2012) (citing *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998)). In addition to failing to allege sufficient facts to meet these elements, Plaintiffs fail to show that Defendants lacked authority to foreclose on the property, and thus, cannot show that Defendants engaged in an "unlawful, overt act."

Accordingly, it is recommended that Plaintiffs' fraudulent misrepresentation and conspiracy claims be **DISMISSED**.

**E.  Quiet Title**

Plaintiffs seek to quiet title to the property. (Doc. 9 at 2, 14). Defendants argue that this claim is not viable because Plaintiffs fail to identify Defendants' weakness in the Deed of Trust or to show the strength of their own title. (Doc. 15 at 18).

The principal issue in a suit to quiet title is the existence of a cloud that a remedy in equity will remove. *See Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.–Waco 1980). To prevail on a suit to quiet title, a plaintiff must show that: (1) he has an interest in a specific property, (2) title to the property is affected by a claim from the defendant, and (3) the defendant's claim, although facially valid, is invalid or unenforceable. *Sadler v. Duvall*, 815 S.W.2d 285, 293 n.2 (Tex. App.—Texarkana 1991). In a quiet title action, the plaintiff must recover on the strength of his own title, not on the weakness of the defendant's title. *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001). In the instant case, Plaintiffs' claim fails because they do not provide any support for their own title against Defendants.

Rather, Plaintiffs attempt to rely on rejected legal theories in support of their claims of the purported weakness of Defendants' title. *Id.*; *see also Olaoye v. Wells Fargo Bank, N.A.*, 2012 WL 1082307, at *3 (N.D. Tex. 2012) (Means, J.) (finding that the complaint contained no facts indicating that the plaintiff had superior title to the property and dismissing the plaintiff's suit to quiet title where the plaintiff made only a conclusory statement that he was the legal and equitable owner of the property, he acknowledged that the property was sold at a foreclosure sale, and his theory as to why the foreclosure sale should be voided was meritless).

For these reasons, Plaintiffs' quiet title claim should be **DISMISSED**.

**F. RICO**

Plaintiffs additionally claim that Defendants have violated 18 U.S.C. § 1964(c) of the RICO statute. (Doc. 9 at 2, 14). Defendants argue that Plaintiffs' claim is not supported factually or legally. (Doc. 15 at 21-22).

18 U.S.C. § 1964(c) states "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit." Additionally, 18 U.S.C. § 1962 prohibits any person or persons employed by or associated with an enterprise to engage in racketeering activities or "through collection of an unlawful debt . . . to use or invest, directly or indirectly, any part of such income." To demonstrate a civil RICO conspiracy, a claimant must show that: (1) two or more persons agreed to commit a substantive RICO offense, and (2) the defendant knew of and agreed to the overall objective of the RICO offense." *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 551 (5th Cir. 2012) (quoting *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010)).

In this case, Plaintiffs have wholly failed to support their conclusory RICO allegation with any facts. Additionally, to the extent that Plaintiffs rely on the rejected "split-the-note" or "show me the note" theories in support of their claim that Defendants are not entitled to foreclose or collect the debt, those allegations must fail for reasons set forth previously.   It is recommended that Plaintiffs' RICO claims be **DISMISSED**.

## G.  RESPA

Plaintiffs allege that Defendant JPMC violated section 6 of RESPA by failing to respond to a qualified written request ("QWR") and Plaintiffs' Request for Admissions.  (Doc. 9 at 6). Defendants contend that (1) the alleged QWR does not qualify as a QWR under RESPA; (2) it was not delivered to the servicer, but rather filed concurrently with Plaintiffs' petition; and (3) if it was delivered, that delivery occurred more than one year after servicing of the loan was transferred to JPMC.  (Doc. 15 at 23).  Defendants additionally claim that JPMC responded to Plaintiffs' request within twenty business days by sending Plaintiff's copies of the original Note and Deed of Trust, and JPMC additionally invited Plaintiffs to inspect the original Note and Deed of Trust, which they declined to do. *Id.* at 23-24.

A QWR is correspondence that adequately identifies the borrower and provides reasons for the borrower's belief "that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).  To establish a communication as a QWR, Plaintiff must plead facts demonstrating that the letter (1) adequately identified his name and account; (2) requested information relating to the servicing of his loan; and (3) included a statement of the reasons for his belief that his account was in error.  12 U.S.C. § 2605(e)(1)(B).  "'Servicing' includes 'any scheduled periodic payments from a borrower' or the 'making of . . . payments of principal and interest. . . .'" 12 U.S.C. § 2605(i)(3); *Hurd v. BAC*

*Home Loans Servicing*, *LP*, 3:11-CV-1752-M, 2012 WL 1106932, at *18 (N.D. Tex. Mar. 29, 2012) (Ramirez, M.J.). "If any servicer of a federally-related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days." 12 U.S.C. § 2605(e) (emphasis added).

Plaintiffs' purported QWR requested JPMC to produce "the original wet ink promissory note as proof that [Plaintiffs are] entitled to pay [the] mortgage debt" and requested further debt collection attempts to cease if JPMC failed to produce the original Note. (Doc. 1-1 at 9). A plain reading reveals the request did not relate to JPMC's "servicing" of the loan. Furthermore, Plaintiffs have failed to rebut Defendants' claims that (1) Plaintiffs merely attached the purported QWR to their original petition rather than sending it to JPMC; and (2) Defendants responded to Plaintiffs' request within twenty business days by enclosing a copy of the original Note and Deed of Trust and inviting Plaintiffs to inspect the original documents. (Doc. 15 at 23-24). Indeed, Plaintiffs' complaint states on August 28, 2012, Defendants mailed Plaintiffs a Note and Deed of Trust, which is within twenty days of their purported QWR.[3] (Doc. 9 at 5). Based on the foregoing, Plaintiffs have failed to state a claim under RESPA and their claim should be **DISMISSED**.

## H. Chapter 12 of Texas Practices and Remedies Code

Plaintiffs attempt to allege violations under Texas Practices and Remedies Code section 12.002(a) by including the text of the statute in their *Amended Petition*. (Doc. 9 at 14). Defendants argue that (1) Plaintiffs fails to identify facts in support of a cause of action under section 12.002(a) of the Texas Practices and Remedies Code; (2) the Deed of Trust assignment is

---

[3] Plaintiffs *Amended Petition* alleges the Note and Deed of Trust JPMC sent were "falsely notarized" and "forged," however, Plaintiffs fail to present facts to support this allegation. (Doc. 9 at 6).

11

not a "lien" or claim within the scope of the statute; and (3) Plaintiffs purport to support this claim through their allegations that Defendants lacked authority to assign the Deed of Trust. (Doc. 15 at 24). Section 12.002(a) of the Texas Civil Practice and Remedies Code provides that a person may not present a document for legal purposes if he knows the document is a fraudulent lien.

The Court finds Defendants' arguments well taken. Plaintiffs' mere transcription of the statute into their complaint is insufficient to state a claim for relief. *Campbell,* 43 F.3d at 975. Additionally, under section 12.001 of the Texas Practices and Remedies Code, a "lien" is defined as "a claim in property for the payment of a debt and includes a security interest." Just as Chief Judge Fitzwater recently concluded in an analogous case, "Plaintiffs have not pleaded facts that establish a plausible claim that [] the assignment of the deed of trust . . . is a lien as defined by the statute" therefore, their claim under section 12.002 should be dismissed." *Garcia v. Bank of New York Mellon*, 3:12-CV-0062-D, 2012 WL 692099, at *3 (N.D. Tex. Mar. 5, 2012) (Fitzwater, C.J.). Accordingly, Plaintiffs' claims under this statute should be dismissed.

**I. Texas Property Code 12.001**

Plaintiffs claim that Defendants violated Texas Property Code § 12.001 (b) and (d) "when they failed to sign, acknowledge or swear to before the Plaintiff and witnesses and certify by an officer authorized to take acknowledgments or oaths, as applicable, the mortgage Note, Deed of Trust and all other documents at closing." (Doc. 9 at 3). Defendants claim that Plaintiffs' argument is meritless because the Note was endorsed in blank by FMC, who had the right, as holder of the Note to endorse it. (Doc. 15 at 16). Defendants additionally argue Plaintiffs signed the Deed of Trust, and a defective acknowledgment does not invalidate a conveyance. *Id.* at 17.

Sections 12.001 (b) and (d) of the Texas Property Code state:

(b) An instrument conveying real property may not be recorded unless it is signed and acknowledged or sworn to by the grantor in the presence of two or more credible subscribing witnesses or acknowledged or sworn to before and certified by an officer authorized to take acknowledgements or oaths, as applicable.

***

(d) The failure of a notary public to attach an official seal to an acknowledgment, a jurat, or other proof taken outside this state but inside the United States or its territories renders the acknowledgment, jurat, or other proof invalid only if the jurisdiction in which the acknowledgment, jurat, or other proof is taken requires the notary public to attach the seal.

Although a defect in the acknowledgment of an instrument conveying real property renders the documents unrecordable, an unrecorded instrument remains valid between the parties to the conveyance.  TEX. PROP. CODE 13.001(b); *see, e.g., Alvarado v. Alvarado*, 13-00-690-CV, 2002 WL 1072067, at *5 n. 6 (Tex. App.--Corpus Christi May 30, 2002).  In this case, despite any alleged defects in the acknowledgment, Plaintiffs signed the Deed of Trust and Note, and therefore, remain bound to its terms.  *Id.*; (Doc. 15-1 at 3-13).  Accordingly, Plaintiffs' claims under this statute should be dismissed.

**J. Plaintiffs' Criminal, Civil Rights, and Conspiracy Allegations**

Plaintiffs attempt to allege federal and state criminal violations against Defendants for making a false statement and tampering with a governmental record, as well as civil claims of civil rights violations and conspiracy, under 42 U.S.C. §§ 1983, 1985, and 1986; 15 U.S.C. § 78ff; and Texas Penal Code §§ 32.32 and 37.10.

Plaintiffs lack standing to bring an action under 42 U.S.C. § 1983 because "the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'"  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quotations omitted).

42 U.S.C. § 1985(3) provides a cause of action to victims of three types of conspiracies: (1) to deprive any person or class or persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (2) to prevent or hinder government authorities "from giving or securing to all persons . . . the equal protection of the laws[;]" and (3) to prevent a voting-eligible citizen from giving his support or advocacy . . . toward an election, or to injure that citizen or his property due to the citizen's advocacy. 42 U.S.C. § 1985(3). Plaintiffs complaint wholly fails to factually support this cause of action.

42 U.S.C. § 1986 provides a cause of action against anyone who has "knowledge that any of the wrongs conspired to be done, and mentioned in Section 1985 of this title, are about to be committed, and having the power to prevent or aid in preventing the commission of the same, neglects or refuses so to do . . . ." 42 U.S.C. § 1986. "Section 1986 claims are therefore derivative of § 1985 violations." *Park v. City of Atlanta*, 120 F.3d 1157, 1159-60 (11th Cir. 1997); *see also Rhyce v. Martin*, 173 F. Supp. 2d 521, 532 (E.D. La. 2001) (citing *Park*). Because Plaintiffs complaint fails to state a claim under Section 1985, it fails to state a claim under Section 1986 as well.

15 U.S.C. § 78ff prohibits willful violations, false and misleading statements in connection with security exchanges and is a criminal statute. Plaintiffs' cannot pursue this or any other federal criminal action, because the prosecution of federal criminal offenses falls within the exclusive jurisdiction of the executive branch of the federal government. *Cort v. Ash*, 422 U.S. 66, 79 (1975) (noting that a plaintiff has no right to bring a private action under criminal statutes). Moreover, Plaintiff lacks standing to allege state criminal violations under the Texas Penal Code because a "private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D*., 410 U.S. 614, 619 (1973).

For these reasons, Plaintiffs allegations under 42 U.S.C. §§ 1983, 1985, and 1986; 15 U.S.C. § 78ff; and Texas Penal Code §§ 32.32 and 37.10 should also be dismissed.

**K. Injunctive and Declaratory Relief**

Plaintiffs' complaint wholly fails to include sufficient facts to state a plausible claim of relief as required to survive Defendants' Rule 12(b)(6) motion. Rather, Plaintiffs' complaint contains unsupported causes of actions that are tied to conclusory allegations, rely on rejected legal theories, and are void of factual support. For this reason, Plaintiffs are not entitled to injunctive or declaratory relief. *See Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (noting the availability of declaratory judgment and injunctive relief depends upon the existence of a judicially remediable right).

## **CONCLUSION**

Based on Plaintiffs' unwavering reliance on rejected legal theories, as evidenced in their already amended complaint, the Court finds that Plaintiffs have already pled their best case and that granting additional leave to amend would be futile and cause needless delay. *See Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) ("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit).

For the forgoing reasons, it is recommended that Defendants' *Motion to Dismiss* (Doc. 15) be **GRANTED and Plaintiffs' claims against Defendants be DISMISSED WITH PREJUDICE.**

**SO RECOMMENDED** January 11, 2013.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE